UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Case No. 3:14-CR-091 JD |
| | ) | 3:16-CV-372 JD |
| DARIUS WILLIAMS | ) | |

## OPINION AND ORDER

Darius Williams pled guilty to one count of possessing heroin with the intent to distribute it. In return, the government entered a binding plea agreement to a term of imprisonment that was well below the ultimate guideline range for that offense, agreed to dismiss the remaining counts of the indictment, and agreed not to bring further charges against Mr. Williams. At sentencing, the Court accepted the parties' agreement and imposed the agreed-upon sentence of 12 years of imprisonment. Mr. Williams now moves to vacate his conviction and sentence under 28 U.S.C. § 2255, arguing that he received ineffective assistance of counsel. He principally argues that his attorney was ineffective for failing to investigate and file motions to suppress. He also argues that his attorney was ineffective at sentencing and that he failed to file a notice of appeal as directed. For the reasons discussed below, Mr. Williams is not entitled to relief on these claims, as the motions he now wishes his attorney had filed would have been meritless, and his attorney was not ineffective at sentencing and was not required to file a notice of appeal. Accordingly, Mr. Williams' motion is denied.

### I. FACTUAL BACKGROUND

On November 12, 2014, Mr. Williams was indicted along with Darron Webb in a fourteen-count indictment charging them with a variety of controlled-substance offenses. Mr. Williams was named as a defendant in four of those counts, and faced charges for distributing heroin (Count 5), possessing heroin with the intent to distribute it (Counts 9 and 13), and

conspiring to possess heroin with the intent to distribute it (Count 11). This indictment stemmed from an investigation of Mr. Williams and Mr. Webb for heroin trafficking. As part of that investigation, officers had conducted surveillance of both Mr. Williams and Mr. Webb, and also conducted controlled buys from Mr. Webb using a confidential informant. On multiple occasions, the confidential informant also interacted with Mr. Williams and observed him in possession of heroin. Multiple other witnesses also identified Mr. Williams as a heroin dealer.

That investigation culminated with the execution of search warrants at two properties associated with Mr. Williams and Mr. Webb, one at 740 Brookfield Street, and the other at 845 Grant Street. A Task Force Agent with the Drug Enforcement Administration submitted a detailed and lengthy affidavit in support of the applications for those search warrants, and the warrants were issued by a magistrate judge. *In re 740 Brookfield Street*, Case No. 3:14-MJ-65 (N.D. Ind. filed Nov. 5. 2014); *In re 845 S. Grant Street*, Case No. 3:14-MJ-66 (N.D. Ind. filed Nov. 6, 2014). Officers executed both warrants on November 11, 2014, and found a variety of drugs, paraphernalia, cash, firearms, and other evidence at the properties. In addition, as a SWAT team was entering the Grant Street property, Mr. Williams was caught attempting to flee, and was detained. He and Mr. Webb were indicted by a federal grand jury the next day.

Mr. Williams pled guilty prior to trial pursuant to a written plea agreement. In that agreement, Mr. Williams agreed to plead guilty to Count 9 of the indictment, which charged him with possessing heroin with the intent to distribute it. The plea agreement included a binding agreement to a term of 12 years of imprisonment. The government also agreed to dismiss the remaining counts of the indictment against Mr. Williams, and to not bring any other firearm or drug trafficking charges against him with respect to the period of time covered by the indictment. Mr. Williams also agreed to waive his right to appeal. [DE 48].

At sentencing, Mr. Williams' attorney contested the calculation of Mr. Williams' advisory sentencing range under the Sentencing Guidelines. He objected to the drug quantity upon which Mr. Williams' base offense level was determined, as well as to enhancements for maintaining a premises for the purpose of distributing a controlled substance, § 2D1.1(b)(12), and for using violence, § 2D1.1(b)(1). After hearing proffers and arguments from the parties, the Court overruled the objections as to the base offense level and the use of violence, but sustained the objection as to the enhancement for maintaining a premises. Ultimately, Mr. Williams had a total offense level of 31 and a criminal history category of VI, producing an advisory sentencing range of 188 to 235 months of imprisonment. After considering the factors under § 3553(a) and the parties' recommendations, the Court accepted Mr. Williams' plea agreement and imposed a term of 12 years of imprisonment (144 months), consistent with the parties' agreement.

Mr. Williams did not appeal, and his conviction and sentence became final on June 12, 2015, when his time to appeal expired. Mr. Williams timely filed a motion under 28 U.S.C. § 2255 just under a year later when he placed the motion in his institution's mailing system on June 6, 2016. [DE 124-3]. That motion has now been fully briefed.

## II. STANDARD OF REVIEW

Section 2255(a) of Title 28 provides that a federal prisoner "claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States . . . may move the court which imposed the sentence to vacate, set aside or correct the sentence." 28 U.S.C. § 2255(a). The Seventh Circuit has recognized that § 2255 relief is appropriate only for "an error of law that is jurisdictional, constitutional, or constitutes a fundamental defect which inherently results in a complete miscarriage of justice." *Harris v. United States*, 366 F.3d 593, 594 (7th Cir. 2004). Relief under § 2255 is extraordinary because it seeks to reopen the criminal process to a person who has already had an opportunity of full

3

process. *Almonacid v. United States*, 476 F.3d 518, 521 (7th Cir. 2007) (citing *Kafo v. United States*, 467 F.3d 1063, 1068 (7th Cir. 2006)).

## III. DISCUSSION

Mr. Williams moves to vacate his conviction under 28 U.S.C. § 2255, arguing that he received ineffective assistance of counsel at various stages. First, he argues that his attorney rendered ineffective assistance in connection with his plea negotiations by failing to move to suppress certain evidence. Second, he argues that his attorney rendered ineffective assistance at sentencing by failing to adequately object to an enhancement under the Sentencing Guidelines. And third, he argues that his attorney was ineffective for failing to file a notice of appeal. The Court considers each argument in turn.

**A.    Ineffective Assistance in Connection with the Plea**

The focus of Mr. Williams' motion is that his attorney rendered ineffective assistance by failing to investigate and file motions to suppress evidence recovered through unlawful searches and seizures. He argues that the search warrant for 740 North Brookfield was invalid for various reasons; that the search of an Oldsmobile found on that property was outside the scope of the warrant; and that he was unlawfully arrested as he attempted to flee when officers began executing a search warrant at another property. Mr. Williams argues that his attorney should have moved to suppress all of the resulting evidence, and that his failure to do so infected the plea negotiations. He thus asks that his conviction be vacated.

To succeed on a claim of ineffective assistance of counsel in negotiating a plea agreement, a defendant must first demonstrate that his counsel's performance was deficient. *Strickland v. Washington*, 466 U.S. 687 (1984); *Gaylord v. United States*, 829 F.3d 500, 506 (7th Cir. 2016). That requires showing that "counsel's representation fell below an objective standard of reasonableness" when measured against "prevailing professional norms." *Strickland*, 466 U.S.

4

at 688. "In the plea bargaining context, reasonably competent counsel will 'attempt to learn all of the facts of the case, make an estimate of a likely sentence, and communicate the results of that analysis before allowing his client to plead guilty.'" *Gaylord*, 829 F.3d at 506 (quoting *Moore v. Bryant*, 348 F.3d 238, 241 (7th Cir. 2003)).

Second, a defendant must show that he was prejudiced by the deficiencies in his counsel's performance. *Strickland*, 466 U.S. at 687. "To show prejudice in the plea bargaining context, a defendant must show that 'there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.'" *Gaylord*, 829 F.3d at 506 (quoting *United States v. Cieslowski*, 410 F.3d 353, 359 (7th Cir. 2005)). "In other words, a defendant must demonstrate a reasonable probability that 'the outcome of the plea process would have been different with competent advice.'" *Id.* (quoting *Lafler v. Cooper*, 132 S. Ct. 1376, 1384 (2012)). When a defendant's claim is based on counsel's failure to file a motion to suppress, a defendant must also "prove the motion was meritorious." *United States v. Cieslowski*, 410 F.3d 353, 360 (7th Cir. 2005); *Long v. United States*, 847 F.3d 916, 920 (7th Cir. 2017).

In support of his claim that counsel's performance was deficient, Mr. Williams relies largely on a letter written to him by his attorney after his conviction became final. In the letter, counsel stated, "I did not obtain copies of the warrants or affidavits and did not file motions to suppress because of ongoing plea discussions." [DE 124-1 p. 9]. Taken at face value, that statement could suggest that counsel failed to properly investigate the viability of suppression motions prior to advising Mr. Williams about the plea agreement, which could represent ineffective assistance. *Tollett v. Henderson*, 411 U.S. 258, 266–67 (1973) ("Counsel's failure to evaluate properly facts giving rise to a constitutional claim, or his failure properly to inform

himself of facts that would have shown the existence of a constitutional claim, might in particular situations meet this standard of proof [for deficient performance]."); *Hurlow v. United States*, 726 F.3d 958, 967 (7th Cir. 2013). Of course, there are other reasons why counsel might have reasonably forgone that avenue of investigation. For example, if the evidence against Mr. Williams would have been substantial even without any evidence that might have been subject to suppression, counsel would have been reasonable in pursuing plea discussions instead of seeking a hollow victory through a suppression motion. The present record does not permit the Court to resolve this issue, though, so the Court will assume for present purposes that counsel unreasonably failed to investigate these potential motions.

To receive relief on these claims, however, Mr. Williams must make two additional showings. First, he must show that the motions would have been meritorious. *Long*, 847 F.3d at 920 ("When a petitioner alleges that counsel was ineffective for failing to move to suppress evidence, we require him to 'prove the motion was meritorious.'" (quoting *Cieslowski*, 410 F.3d at 360)). Second, he must show that if his attorney had filed the motions, he would have insisted on going to trial instead of pleading guilty. *Id.* (stating that to prove prejudice, a petitioner "would have to show 'a reasonable probability that, but for counsel's errors, he would not have pleaded' guilty" (quoting *Cieslowski*, 410 F.3d at 359)). To make that showing, a defendant cannot rely on a mere allegation that he would have insisted on going to trial; he "must go further and present objective evidence that a reasonable probability exists that he would have taken that step." *Cieslowski*, 410 F.3d at 359. The Court therefore considers whether Mr. Williams can make these showings as to any of the motions in question.

 1. **Search Warrant for 740 North Brookfield**

Mr. Williams first argues that the search warrant for 740 North Brookfield (where officers found a firearm and ammunition, stun guns, and a variety of drug paraphernalia) was

6

invalid, and that his attorney should have moved to suppress the fruits of the search at that property. He argues that no affidavit was ever offered in support of the warrant, and that no probable cause existed to search that property. These assertions have no basis in reality, though, and any motion to suppress the fruits of this search warrant would have been frivolous.

Contrary to Mr. Williams' claim that no affidavit was submitted in support of the warrant, the application for the search warrant was actually accompanied by a detailed, 32-page affidavit from an experienced Task Force Agent with the DEA. *In re 740 N. Brookfield St.*, Case No. 3:14-MJ-65, DE 1 p. 6–37 (N.D. Ind. filed Nov. 5, 2014). That affidavit established probable cause many times over for a search of this property. For example, the affidavit recounts a statement made to investigators by a construction worker who had done work for Mr. Williams at the Brookfield Street property. That individual gave a detailed account of how he was beaten with a handgun, robbed, and held against his will by Mr. Williams and his co-defendant at the Brookfield Street property. He stated that his blood from the beating may still be on the floor or walls in the basement at that address. He also told officers that he had previously seen Mr. Williams and his co-defendant dealing heroin from that property; that he had seen Mr. Williams with a large amount of heroin at that property, and that Mr. Williams had even used the individual's hammer to break up the heroin; and that he saw Mr. Williams with large amounts of cash and with handguns at that property. Officers were able to verify aspects of that individual's statements.

In addition, officers used a confidential informant to conduct a number of controlled buys from Mr. Williams' co-defendant. On at least two occasions, the informant also observed Mr. Williams in possession of heroin. On one of those occasions, the informant saw Mr. Williams possess about three ounces of heroin, and saw Mr. Williams and other people cutting the heroin.

On the other occasion, Mr. Williams was in the process of selling a couple grams of heroin to two other individuals. Surveillance officers also observed Mr. Williams in the vicinity of and interacting with his co-defendant in relation to some of the other controlled buys. Officers also observed multiple cars regularly parked at the Brookfield Street address that were registered to Mr. Williams and that Mr. Williams was seen driving. In addition, multiple other witnesses told officers that they had been with an acquaintance on multiple occasions as he purchased heroin from Mr. Williams, and officers were able to corroborate aspects of those statements, too.

In sum, officers had an eyewitness statement that Mr. Williams had possessed heroin, proceeds, and tools of the drug trade inside the Brookfield Street property; that individual believed his blood might still be on the floor or walls of the basement, meaning evidence of the beating might still be found inside; the confidential informant and controlled buys showed that Mr. Williams' participation in the heroin trade was ongoing; and officers observed multiple cars parked at the Brookfield Street property that belonged to Mr. Williams and that were seen in connection with the controlled buys, which further connected Mr. Williams and his drug trafficking activities to that property. This evidence amply established probable cause to believe that a search of that property would uncover evidence of a crime, which is all that is required. *United States v. Glover*, 755 F.3d 811, 816 (7th Cir. 2014).

Even if the affidavit fell short of establishing probable cause for the warrant, that would still not permit the exclusion of the resulting evidence. Because police officers are justified in relying in good faith on warrants issued by magistrate judges, suppression is only proper when a warrant is "based on an affidavit 'so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable.'" *United States v. Leon*, 468 U.S. 897, 923 (1984);

*United States v. Jones*, 763 F.3d 777, 796 (7th Cir. 2014).[1] For the reasons just discussed, that is not remotely the case here, so a motion to suppress would have been denied. Thus, Mr. Williams lost nothing at all from his counsel's failure to investigate what would have been a meritless motion to suppress, so he is entitled to no relief in this respect.

### 2. Search of the Oldsmobile

Mr. Williams next argues that officers unlawfully searched an Oldsmobile parked in the back yard of the property at 740 Brookfield. He argues that the warrant authorizing a search of the Brookfield Street property did not specify the Oldsmobile as a place to be searched, so the vehicle was outside the scope of the warrant and officers should have sought a separate warrant before searching it. He thus contends that his attorney should have moved to suppress the $26,000 found in a safe in the trunk of the vehicle.[2]

The Oldsmobile was not outside the scope of the search warrant, though, so the fruits of its search would not have been suppressed. Mr. Williams' argument proceeds on the assumption that the warrant only authorized a search of the residence located at that address; he argues that because the car was in the backyard and was not part of the residence, it was outside the scope of the warrant. The warrant was not so limited, though. It authorized a search of "Property located at: 740 N. Brookfield Street, South Bend, Indiana," and it identified a list of items to be seized at

---

[1] Mr. Williams also suggests in passing that his attorney should have sought a *Franks* hearing. However, he does not identify any false statements in the affidavit—he contends there was no affidavit—or attempt to show that those falsehoods were necessary to a finding a probable cause, so he has not shown that a motion under *Franks* would have had any possibility of success. *Franks v. Delaware*, 438 U.S. 154, 155–56 (1978) (holding that a hearing on such a motion is only required if the defendant makes a "substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause").

[2] Mr. Williams also suggests that officers claimed to have found heroin in the vehicle, but he denies that any heroin was actually in the vehicle.

9

that property. [Case No. 3:14-MJ-65, DE 2]. As Mr. Williams acknowledges, the Oldsmobile was located on the property (in the backyard) located at that address. Thus, it was within the scope of the warrant, and officers were entitled to search it for any of the items to be seized that could be found in the vehicle.

The warrant need not have specifically identified the Oldsmobile in order to authorize its search. "[A]s a general rule, law enforcement officers may search a motor vehicle that is located on a premises a warrant authorizes them to search, even if it is not identified in the warrant . . . ." *United States v. Vanderkinter*, No. 12-CR-165, 2012 WL 4955305, at *4 (E.D. Wis. Oct. 17, 2012); *see also United States v. Percival*, 756 F.2d 600, 612 (7th Cir. 1985) ("We . . . agree with other courts that have addressed this issue and hold that a search warrant authorizing a search of particularly described premises may permit the search of vehicles owned or controlled by the owner of, and found on, the premises."); 2 W. LaFave, *Search and Seizure* § 4.10(c) (5th ed.) ("It has often been held that a search warrant authorizing the search of certain premises covers automobiles found on those premises, provided of course that the place searched in the vehicle could contain one of the items described in the search warrant.") (cited favorably in *Percival*, 756 F.2d at 612). Though the Seventh Circuit has cautioned that the better practice is to specify any vehicles as places to be searched, it has held that the Constitution does not mandate such a practice. *Percival*, 756 F.2d at 612. Thus, a motion to suppress this evidence would have been denied, and Mr. Williams suffered no prejudice from its not being filed.

### 3. Mr. Williams' Arrest

Last, Mr. Williams argues that his arrest was unlawful. At the time officers executed the search warrants on November 11, 2014, no arrest warrant had been issued for Mr. Williams. However, as a SWAT team was entering the house at 845 Grant Street to conduct the search, Mr. Williams was caught trying to flee. The following day, he was indicted by a federal grand jury,

after which he was formally arrested on the indictment. Mr. Williams was apparently continuously detained from the time he was caught fleeing until his arrest on the indictment. Mr. Williams asserts that police could not have had probable cause for his arrest at the time of the search since he was never even a suspect in this investigation until after they arrested him, so his arrest was unlawful. Again, however, this assertion has no basis in reality.

First, as shown by even the exhibits Mr. Williams attached in support of his motion, he was suspected of drug dealing and other serious offenses well before the warrants were executed. The police report attached as Exhibit J to Mr. Williams' motion shows that the kidnapping victim gave his statement to detectives on October 23, 2014. [DE 124-1 p. 26–32]. As discussed above, that individual's statement described being beaten and kidnapped by Mr. Williams and his co-defendant, and further described the individual's firsthand observations of Mr. Williams possessing and dealing heroin, and possessing firearms in connection with his drug trafficking activities. In addition, as shown by the probable cause affidavit, law enforcement had already been investigating Mr. Williams after another individual died of a heroin overdose and multiple witnesses identified Mr. Williams as that individual's heroin dealer. Moreover, as described above, the surveillance conducted by law enforcement and the observations of the confidential informant provided further evidence that Mr. Williams was involved in the drug trade. Those facts amply established probable cause to arrest Mr. Williams, and were each recounted in the probable cause affidavit for the search warrant of the property Mr. Williams was found at, and thus would have been in the collective knowledge of the officers.

Furthermore, since Mr. Williams was found at the property where a search warrant was being executed, officers were entitled to detain him at least for the duration of the search. The Supreme Court has recognized a "categorical" rule permitting "officers executing a search

11

warrant 'to detain the occupants of the premises while a proper search is conducted.'" *Bailey v. United States*, 133 S. Ct. 1031, 1037–38 (2013) (quoting *Michigan v. Summers*, 452 U.S. 692, 705 (1981)). That rule promotes officer safety, facilitates the orderly completion of the search, and prevents flight in the event that incriminating evidence is found. *Bailey*, 133 S. Ct. at 1038–41; *Summers*, 452 U.S. at 702–03. Thus, Mr. Williams was lawfully detained while officers conducted the search. And since the search revealed a variety of contraband and evidence of unlawful activity, including over an ounce of heroin, digital scales and other paraphernalia, firearms and ammunition, and a large amount of cash, [DE 124-1 p. 19, 25; Case No. 3:14-MJ-66, DE 3; DE 78 p. 3], officers had probable cause to arrest Mr. Williams by the time the search was completed based on the evidence found during the search.[3] Mr. Williams therefore cannot establish that his detention or arrest were unlawful such that a motion to suppress would have been meritorious.

Finally, Mr. Williams does not indicate how his arrest being unlawful would have impacted the outcome of this case. He insists that the only evidence in his possession at the time of his arrest was $615 in cash in his pocket, and he does not identify any other evidence that could have been suppressed had his arrest been unlawful.[4] Mr. Williams does not indicate how the suppression of that single piece of evidence would have had any material impact on the strength of the government's case against him, or how it could have possibly affected his

---

[3] The government also represented at sentencing that an individual was waiting to purchase heroin from Mr. Williams when officers began the search, and that the individual stated he had purchased heroin from Mr. Williams approximately thirty times over the previous three weeks, [DE 100 p. 10], which would have provided even further support for Mr. Williams' arrest.

[4] The government indicates—and Mr. Williams admitted in his plea agreement—that about $7,500 in cash was found in Mr. Williams' pocket, but Mr. Williams insists in his present filings that only $615 was found in his pocket, and that the rest was found inside the residence.

decision to plead guilty to a charge based on his possession of heroin the previous month. And given the considerable benefit Mr. Williams received from the plea agreement his counsel negotiated for him, it is inconceivable that the suppression of this evidence would have had any impact on the outcome of this case.

Pursuant to his plea agreement, Mr. Williams pled guilty to a single count of possessing heroin with the intent to distribute it. In return for that plea, the government agreed to a binding sentence that represented a downward variance of about three levels from the ultimate sentencing range under the Guidelines. In addition, the government not only agreed to dismiss the remaining counts of the indictment, it agreed not to bring additional firearm charges or drug trafficking charges with respect to the time period covered by the indictment. [DE 48 p. 5]. That last agreement was substantial, as the government had already represented that it intended to add a felon-in-possession charge and a charge under 18 U.S.C. § 924(c) (prohibiting the possession of a firearm in furtherance of a drug trafficking crime), which would have carried a mandatory minimum sentence of 5 years. [DE 38 p. 5]. Thus, Mr. Williams' plea agreement not only guaranteed him a sentence that turned out to be well below the guideline range for his one count of conviction,[5] it prevented the government from proceeding on other charges that could have resulted in additional penalties.

In light of that considerable benefit, it is implausible that Mr. Williams might have proceeded to trial if any fruits of his arrest were suppressed, and his mere allegation to that effect is insufficient to carry his burden on this issue. *Cieslowski*, 410 F.3d at 359. Therefore, Mr. Williams cannot show that he suffered any detriment from counsel's failure to file what would

---

[5] Of course, the Court could have rejected the plea agreement, but Mr. Williams would have had a chance to withdraw his plea in that event. Fed. R. Crim. P. 11(c)(5), (d)(2)(A).

have been a meritless and inconsequential motion on this topic.[6] And because Mr. Williams has failed to show that any meritorious motion to suppress was available to him that might have changed the outcome, he is not entitled to any relief on his claim that counsel rendered ineffective assistance in connection with his plea.

**B.    Ineffective Assistance at Sentencing**

Mr. Williams next argues that his attorney rendered ineffective assistance at sentencing by failing to adequately object to a two-level enhancement he received under § 2D1.1(b)(2) of the Guidelines for the use of violence. "In order to succeed on a claim of ineffective assistance of trial counsel at the sentencing hearing, [a defendant] must above all demonstrate that his attorney performed in a deficient manner during the hearing, and then prove 'that but for his counsel's unprofessional error, there is a reasonable probability that the results [of his sentencing hearing] would have been different.'" *Fuller v. United States*, 398 F.3d 644, 650 (7th Cir. 2005) (quoting *Berkey v. United States*, 318 F.3d 768, 774 (7th Cir. 2003)) (internal citation omitted)

Mr. Williams cannot make those showings here. Section 2D1.1(b)(2) imposes a two-level enhancement "[i]f the defendant used violence, made a credible threat to use violence, or directed the use of violence . . . ." U.S.S.G. § 2D1.1(b)(2). Mr. Williams received that enhancement because he and his co-defendant kidnapped and beat another individual in order to recover drugs, money, and a firearm that the individual had stolen from him. Mr. Williams' attorney did object to this enhancement at sentencing by arguing that the information in the

---

[6] Mr. Williams also argues in passing that his attorney should have argued that the government committed a *Brady* violation by failing to disclose discovery materials. However, the only materials he identifies—the search warrants and affidavits—are not exculpatory and could not support a *Brady* claim. Moreover, this argument is largely just a variation on Mr. Williams' argument that his attorney was ineffective for failing to properly investigate the charges and request the relevant materials from the government. As discussed above, however, that argument fails because Mr. Williams has not shown that any further investigation would have resulted in a meritorious motion or would have had any other beneficial impact on his case.

14

Presentence Report was unreliable. [DE 100 p. 6]. Mr. Williams claims in his motion that his attorney should have further argued that the victim's statement was unreliable because an incident report was not filed for that event until several months later, and because the victim gave conflicting statements about why he was kidnapped. However, as the government represented at sentencing, the victim reported the crime to his local police as soon as he was released [DE 100 p. 14]; the incident report Mr. Williams refers to in his motion was only a report of a subsequent interview with the victim by a detective. [DE 124-1 p. 27–32]. In addition, the enhancement was not based only on the victim's own statements; Mr. Williams' co-defendant admitted that he and Mr. Williams committed the kidnapping, and his admissions corroborated the victim's account. [DE 100 p. 11–14]. Thus, the details Mr. Williams now argues his attorney should have emphasized about the victim's credibility would have been inconsequential, so counsel was not ineffective for failing to raise them, and Mr. Williams suffered no prejudice as a result.

Mr. Williams also fails to establish prejudice for a more fundamental reason: he entered a binding plea agreement for a term of 12 years, and the Court accepted the agreement and imposed that sentence. In other words, Mr. Williams got exactly the sentence he asked for, so he could not have been prejudiced by any potential shortcomings at sentencing. It is also notable that even without this two-level enhancement, Mr. Williams' guideline range would have been 151 to 188 months of imprisonment. The 144-month sentence that the parties agreed to and the Court imposed would have still been below that advisory range, and the Court would have accepted the agreement and imposed that same sentence even if it had sustained the defendant's objection to this enhancement. Mr. Williams therefore suffered no conceivable prejudice, and is not entitled to relief on his claim of ineffective assistance at sentencing.

## C. Ineffective Assistance for Failure to Appeal

Finally, Mr. Williams argues that his attorney rendered ineffective assistance by failing to file a notice of appeal as requested. As a general matter, "a lawyer who disregards specific instructions from the defendant to file a notice of appeal acts in a manner that is professionally unreasonable." *Roe v. Flores-Ortega*, 528 U.S. 470, 476–77 (2000). "And 'when counsel fails to file a requested appeal, a defendant is entitled to an appeal without showing that his appeal would likely have merit.'" *Dowell v. United States*, 694 F.3d 898, 901 (7th Cir. 2012) (quoting *Peguero v. United States*, 526 U.S. 23, 28 (1999)) (internal alterations omitted). However, the Seventh Circuit has recognized an exception to that general rule when a defendant agrees in a plea agreement to waive his right to appeal:

> Once a defendant has waived his right to appeal not only in writing but also in open court under Rule 11(b)(1)(N) [at a change of plea hearing], the sixth amendment does not require counsel to disregard the waiver. The regimen of *Strickland* applies: the defendant must show both objectively deficient performance and prejudice. Unless a non-frivolous issue could be raised on appeal, counsel should protect the client's interest in retaining the benefit of the plea bargain.

*Nunez v. United States*, 546 F.3d 450, 456 (7th Cir. 2008); *see also Solano v. United States*, 812 F.3d 573, 575 (7th Cir. 2016) ("[T]he Sixth Amendment does not require an attorney to accede to a defendant's request to file an appeal where the defendant has knowingly and voluntarily waived that right as part of a valid plea agreement."). These cases acknowledge that the fundamental decision of whether to appeal rests with the defendant. But they also recognize that when a defendant enters an agreement waiving his right to appeal, he has already made that decision. As the Seventh Circuit explained in *Nunez*, "It will not do to reply that the decision to appeal is entrusted to the defendant personally, and that counsel must do the client's bidding. [The defendant] *had* made a personal decision—a decision not to appeal. That's what the waiver was about." 546 F.3d at 455.

16

Here, Mr. Williams states that he directed his attorney to file a notice of appeal. However, he also expressly agreed in his plea agreement to waive his right to appeal: "I expressly waive my right to appeal or to contest my conviction and all components of my sentence or the manner in which my conviction or my sentence was determined or imposed, to any Court on any ground other than a claim of ineffective assistance of counsel . . . ." [DE 48 p. 3]. Mr. Williams further stated under oath on multiple occasions that he understood that waiver. [DE 128 p. 14–21; DE 100 p. 44]. Counsel was not ineffective for relying on the decision that Mr. Williams made in his plea agreement (for which he received considerable value) and that he confirmed under oath, instead of a later instruction to the contrary. *Nunez*, 546 F.3d at 455 ("Instead of being obliged to follow his client's (latest) wishes, however unreasonable they may be, a lawyer . . . has a duty to his client to avoid taking steps that will cost the client the benefit of the plea bargain."). Though some claims can still be raised on appeal notwithstanding a waiver, *id.* at 454, Mr. Williams does not even identify what claims he wished to raise, so he cannot invoke any exceptions to this rule. He argues only that the failure to file a notice of appeal always constitutes ineffective assistance and prejudice. While that is true in other circuits, it is not the law of this circuit. *Id.* at 453–54. Therefore, Mr. Williams' attorney was not ineffective for declining to file a notice of appeal, and Mr. Williams is not entitled to relief on that basis.

## IV.  CERTIFICATE OF APPEALABILITY

Pursuant to Rule 11 of the Rules Governing Section 2255 Proceedings for the United States District Courts, the Court must "issue or deny a certificate of appealability when it enters a final order adverse to the applicant." A certificate of appealability may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c); Rule 11, Rules Governing Section 2255 Proceedings for the United States District Courts.  The substantial showing standard is met when "reasonable jurists could debate whether

(or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Slack v. McDaniel,* 529 U.S. 473, 484 (2000) (quoting *Barefoot v. Estelle,* 463 U.S. 880, 893 & n.4 (1983)); *see Young v. United States*, 523 F.3d 717 (7th Cir. 2008). Here, for the reasons previously discussed, the Court does not find that Mr. Williams has made a substantial showing of the denial of any constitutional rights, or that any issues in this motion are adequate to deserve encouragement to proceed further. The Court therefore denies the issuance of a certificate of appealability.

The Court advises Mr. Williams that pursuant to Rule 22(b) of the Federal Rules of Appellate Procedure, when the district judge denies a certificate of appealability, the applicant may request a circuit judge to issue the certificate. The Court further advises Mr. Williams that any notice of appeal of this judgment must be filed within 60 days after the judgment is entered. Fed. R. App. P. 4(a); *Guyton v. United States*, 453 F.3d 425, 427 (7th Cir. 2006) (stating that "the time to contest the erroneous denial of [the defendant's] first § 2255 motion was within 60 days of the decision").

## V.  CONCLUSION

For those reasons, the Court DENIES Mr. Williams' motion for relief under § 2255 [DE 123], and DENIES the issuance of a certificate of appealability.

SO ORDERED.

ENTERED:  April 17, 2017

/s/ JON E. DEGUILIO
Judge
United States District Court